UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES OF AMERICA,

                **REPORT & RECOMMENDATION**

        -against-           **09 CR 544 (BMC)(LB)**

MARLON PENNY,
        also known as
        "Rowan Williams,"
                Defendant.

-----------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Defendant Marlon Penny moves for dismissal of the indictment charging him with illegal

reentry, pursuant to Federal Rule of Criminal Procedure 12(b)(2) and the Fifth Amendment,

claiming that his prior deportation order was invalid.  The Honorable Brian M. Cogan referred

this matter to me for a Report & Recommendation pursuant to 28 U.S.C. §636(b).  For the

following reasons, it is recommended that defendant's motion to dismiss should be denied.


## BACKGROUND

      Defendant was born in Canada on December 23, 1987.  (Def.'s Affirm at Exhibit C;

docket entry 15.)[1]  Defendant's mother, Maria Grant, moved to Brooklyn with defendant when

he was two years old and married Elvin Grant, a United States citizen, on November 10, 1992.

(Exhibit D.)  In January 2005, defendant was arrested for robbery.  On October 24, 2005,

defendant pled guilty to attempted robbery in the second degree and was sentenced to one year in

prison.  (Def's Affirm ¶5; Exhibit E.)  On October 26, 2005, defendant was interviewed by an

---

[1]  All references herein are to defendant's exhibits attached to the Affirmation of Justine A. Harris, document
15.

officer of the United States Immigration and Customs Enforcement ("ICE").[2]  (Exhibit F.)

During the interview, defendant completed an Affidavit in which he stated that he came to the

United States as a "baby," that his mother is a United States citizen and he requested a hearing

before the Immigration Court to determine whether he could remain in the United States.  (Id.)

On November 7, 2005, the United States Immigration and Naturalization Service, now known as

the United States Citizenship and Immigration Services,[3] (hereinafter the "Service"), issued a

Notice to Appear and Record of Deportable/Inadmissible Alien which listed that defendant is not

a United States citizen or national, that he is a citizen of Canada, that he arrived in the United

States at a date and place other than that designated by the Attorney General, that he was

convicted of attempted robbery and that he was 18 years of age.[4]  (Exhibit G.)  Defendant was

also provided a Notice of Rights, which informed him (i) he had the right to a hearing in front of

an immigration judge, (ii) he had the right to contact an attorney, (iii) upon his request, he would

be provided with a list of free legal organizations that may represent him for free, (iv) he has the

right to communicate with his consular or diplomatic officers, and (v) he may use a telephone to

call a lawyer or consular officer at any time prior to his departure.  (Exhibit F.)  Defendant

requested a hearing and stated that he had read and was read his Notice of Rights in English.

(Id.)

On June 12, 2006, shortly after being transferred to immigration custody, ICE

commenced removal proceedings against defendant by personally serving him with a Notice of

Intent to Issue a Final Administrative Removal Order ("Notice of Intent").  (Exhibit H; Def.'s

Affirm ¶7.)  The Notice of Intent stated defendant would be placed in expedited administrative

---

[2]  ICE is an agency of the United States Department of Homeland Security ("DHS").

[3]  United States Citizenship and Immigration Services is an agency of DHS.

[4]  According to his birth certificate, at the time the Notice to Appear was issued, defendant was seventeen years old.  (Exhibit C.)

removal proceedings pursuant to Immigration and Nationality Act ("INA") §238(b), 8 U.S.C. §1228(b), based on the allegations that he is not a citizen or national, is a Canadian citizen, was not admitted at the time of entry into the United States and was convicted of attempted robbery in the second degree, which is an aggravated felony as defined by the INA §101(a)(43), 8 U.S.C. §1101(a)(43).  (Id.)  Defendant designated that he contested his deportability on the Notice of Intent.  (Id.)  Also on June 12, 2006, ICE served defendant with a Notice of Custody Determination.  (Exhibit I.)  Defendant designated on this notice that he requested a redetermination of his custody decision by an immigration judge (id.) and requested that his consular officials be notified (Exhibit J).

On June 17, 2006, defendant wrote a rebuttal letter contesting his deportability and stating that he was lawfully admitted when he arrived in the United States.  (Exhibit K.) Defendant also stated that his daughter was born on May 6, 2006 and although he had not seen her yet, he wanted to watch her grow up and not miss her "whole life."  (Id.)  Defendant noted that his mother has a green card and his step-father was a United States citizen, who he believed could sponsor him.  The Service issued a Final Administrative Removal Order ("Final Order") pursuant to §238(b) of the INA, 8 U.S.C. §1228(b), which was served on defendant on July 17, 2006.  (Exhibit L.)  The Final Order stated that defendant is not a citizen or national of the United States, he was not lawfully admitted for permanent residence, he has a final conviction of an aggravated felony as defined by §101(a)(43) of the INA, 8 U.S.C. §1101(a)(43), is ineligible for any discretionary relief from removal and is deportable pursuant to 237(a)(2)(A)(iii),

8 U.S.C. §1227(a)(2)(A)(iii). (Id.)[5] No selection was made on the form whether defendant waived or reserved any petition for review. (Id.) The attachment to the Final Order stated that defendant's written response was considered. (Id.) On July 25, 2006, defendant was deported to Canada. (Compl. ¶5.)

## PROCEDURAL HISTORY

On June 24, 2009, defendant was arrested in Brooklyn, New York and charged under the name "Rowan Williams" with Criminal Possession of Marijuana in the Fifth Degree, in violation of New York Penal Law §221.10(1). (Compl. ¶2.) On June 26, 2009, defendant was placed in ICE's custody. (Id. at 3.) On July 8, 2009, defendant was charged with a violation of 8 U.S.C. §1326 (a) and (b)(2) (Compl.) and the Grand Jury indicted defendant on the charges on August 4, 2009 (docket entry 6). Defendant was arraigned on August 17, 2009 and entered his plea of not guilty to the charges. (Docket entry 10.) On November 13, 2009, defendant moved to dismiss the indictment and the Government opposes the motion. (Docket entries 15-17, 21-23.)[6] The Court has excluded the time from the date of defendant's arraignment to the date the motion to dismiss was argued from the calculation of the Speedy Trial Act. (Docket entries 9, 12; entries dated October 6, 2009, November 4, 2009, January 4, 2010 and January 28, 2010.) The Court heard oral arguments on February 2, 2010.

---

[5] Defendant argues that he did not acknowledge service on the Final Order. (Reply Mem. at 4.) However, the Final Order does not have an acknowledgment of service section or a space for defendant's signature. (Exhibit L.) Instead, there is a section entitled "Certificate of Service" which was properly completed by an Officer stating that defendant was served in person on July 17, 2006. (Id.) In addition, defendant's finger print is on the Final Order. (Id.)

[6] Defendant's reply raised new and additional arguments in support of his motion to dismiss and the Government filed a sur-reply. (Docket entries 21, 22.) Defendant also filed a "letter regarding oral argument" which was addressed at the hearing on the motion to dismiss. (Docket entry 23.) The Court's Report & Recommendation considers these papers.

# DISCUSSION

## I.      Illegal Reentry

Section 1326(a) of Title 8 of the United States Code makes it a crime for a deported or removed non-citizen to enter, attempt to enter, or be found in the United States without the express consent of the Attorney General.  U.S. v. Copeland, 369 F.Supp.2d 275, 285 (E.D.N.Y. 2005).  Section 1326(b)(2) supplements subsection (a) by authorizing a maximum prison term of 20 years for "any alien described" in subsection (a) if the initial deportation "was subsequent to a conviction for commission of an aggravated felony."  U.S. v. Castro, 472 F.Supp.2d 321, 328 (E.D.N.Y. 2007) (quoting 8 U.S.C. §1326(b)).  A non-citizen charged with a violation of §1326 may collaterally attack the validity of a prior deportation order and proceedings since the prior order is a necessary element of the charged criminal offense.  See 8 U.S.C. §1326(d); see also United States v. Mendoza-Lopez, 481 U.S. 828 (1987) (Deportation proceedings are not valid and cannot be used to establish a prior order of deportation for purposes of a criminal prosecution for illegal reentry if the proceedings failed to afford the non-citizen due process of law.)

In order to challenge the validity of the prior deportation order, a defendant must demonstrate three elements:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. §1326(d).  The Government concedes that defendant exhausted his administrative remedies here.  (Government's Response in Opp'n ("Opp'n") at 4; docket entry 17.)  Therefore, defendant must satisfy the remaining two prongs to prevail on his motion to dismiss.

## II.  Opportunity for Judicial Review

The Due Process Clause of the Fifth Amendment guarantees every person the equal protection of the laws.  Jankowski-Burczyk v. I.N.S., 291 F.3d 172, 176 (2d Cir. 2002).  While the constitutional sufficiency of procedures varies with the circumstances of each individual case, Ferreras v. Ashcroft, 160 F.Supp.2d 617, 630 (S.D.N.Y. 2001) (citing Landon v. Plasencia, 459 U.S. 21, 33 (1982)), in immigration cases, the Due Process Clause requires only that an alien receive notice and a fair hearing where the Service must prove by "clear, unequivocal, and convincing" evidence that the alien is subject to deportation, Rojas-Reyes v. Immigration and Naturalization Service, 235 F.3d 115, 124 (2d Cir. 2000) (citing Woodby v. INS, 385 U.S. 276, 286 (1966)).

In 1994, Congress authorized the Attorney General to prescribe and use an expedited removal procedure for non-legal permanent resident ("LPR") aggravated felons.  Jankowski-Burczyk, 291 F.3d at 180 (citing 8 U.S.C. §1228(b)).  Courts have found this expedited removal procedure comports with due process.  See Ferreras, 160 F.Supp.2d at 632 (expedited removal procedures do not violate due process); United States v. Brown, 127 F.Supp.2d 392, 403 (W.D.N.Y. 2000) ("[t]his scheme for expedited statutory deportation has been held to comport with the minimum due process requirement as defined by the Supreme Court")(citations omitted); see also United States v. Garcia-Martinez, 228 F.3d 956, 960-64 (9th Cir. 2000) (no due process violation in expedited removal proceedings); United States v. Benitez-Villafuerte,

186 F.3d 651, 657-58 (5th Cir. 1999), cert. denied, 528 U.S. 1097 (2000) (the removal procedure for persons who never obtained the status of permanent residency and were convicted of an aggravated felony comports with due process where an alien is given reasonable notice of the charges, the opportunity to be represented by counsel and a reasonable opportunity to inspect the evidence and rebut the charges)(citing 8 U.S.C. §1228(b)(4)).  Therefore, as long as the Service complied with the expedited deportation scheme set forth in 8 U.S.C. § 1228(b)(4) when deporting defendant, the prior deportation may be used to establish a violation of 8 U.S.C. §1326.  Brown, 127 F.Supp.2d at 403.

Defendant alleges that there were significant procedural defects in his deportation proceedings, which improperly deprived him of the opportunity for judicial review, even though the review was "technically" available to him.  (Mem. in Supp. at 7; docket entry 16.) [7] Defendant states that it is unclear whether the Final Order was adjudicated by a person other than the one who issued the charges.  (Reply Mem. at 4; docket entry 21.)  Defendant alleges that there is no evidence that the officers reviewing the file considered the information provided by him in his rebuttal and failed to maintain an adequate record for review.  (Id.)  Defendant argues that there is no record that ICE provided him with a "list of available free legal services programs" pursuant to 8 C.F.R. §238.1.  (Mem. in Supp. at 8-9.)  Defendant states that DHS failed to notify his consular officials and failed to provide review of his custody determination. (Reply Mem. at 4.)  Defendant's counsel also argues that it is unclear whether defendant was informed of his right to judicial review.  (Mem. in Supp. at 7.)  Defendant further states that the Notice of Intent incorrectly provided that he had fourteen days to appeal a final order of deportation when, pursuant to 8 U.S.C. §1252(b)(1), he actually had thirty days to file a petition for review with the Second Circuit Court of Appeals.  (Reply Mem. at 2.)  Defendant argues that

---

[7]  Listed page numbers refer to the original pagination of the documents and not the ECF page numbers.

the documents served with the Final Order, read together, give the impression that judicial review was not available. (Id. at 3.) Defendant alleges that he was deported eight days after being served with the Final Order, contrary to 8 U.S.C. §1228(b)(3) and 8 C.F.R. §238(f)(1). (Mem. in Supp. at 7.) In addition, defendant states that DHS's cumulative actions dissuaded him from seeking judicial review. (Reply Mem. at 3.)

The Government argues that the Final Order was adjudicated by a person other than the individual who issued the Notice of Intent. (Suppl. Opp'n at 1; docket entry 22). The Government also argues that there is no "stand-alone right to notice of the availability of judicial review." (Opp'n at 5.) The Government does not dispute that defendant was "removed before the fourteen-day period mandated by 8 U.S.C. §1228(b)(3)." (Id. at 6.) However, the Government argues that defendant's removal "would not have precluded the court of appeals from exercising jurisdiction over a timely-filed petition for review." (Id. at 7.) The Government further argues that no procedural error "relating to the issuance" of the Final Order has been raised by defendant; moreover, defendant has not demonstrated that he was prejudiced by these errors. (Suppl. Opp'n at 2.)

A.      *Adjudication of the Final Order*

Defendant argues that it is unclear whether the Final Order was adjudicated by a person other than the individual who issued the charges. (Reply Mem. at 4.) Pursuant to §238(b)(4)(F) of the INA, 8 U.S.C. §1228(b)(4)(F), the "Attorney General shall provide that . . .the final order of removal is not adjudicated by the same person who issues the charges." The Notice of Intent was issued by "Mark Saccamano." (Exhibit H.) While the Attachment to the Final Administrative Removal Order ("Attachment") is unsigned, the Final Order clearly states it was

issued by "John E. McCarthy." (Exhibit L.) Therefore, the record demonstrates that the Final Order and the Notice of Intent were issued by different individuals.

B.    *Unsigned Attachment to the Final Order*

Defendant argues that the "review of the order is unsigned, typed on a blank piece of paper, and contains no indication that the particulars of Mr. Penny's objections were considered . . . which makes it impossible for any court to meaningfully review possible legal errors and constitutional claims." (Reply Mem. at 6.)

Defendant's argument that the Service failed to maintain an adequate record for review fails. (Reply Mem. at 4.) Pursuant to 8 C.F.R. §238.1(h), the record of proceeding shall include: "the charging document (Notice of Intent); the Final Administrative Removal Order (including any supplemental memorandum of decision); the alien's response, if any; all evidence in support of the charge; and any admissible evidence, briefs, or documents submitted by either party respecting deportability." The record herein includes the above documents.[8] However, defendant alleges that an explanation for defendant's deportation was not provided in the record.

Title 8 of the Code of Federal Regulations states that "if the alien timely submits a rebuttal to the allegations . . . the Final Administrative Removal Order [shall] . . . state[] the reasons for the decision of deportability." 8 C.F.R. §238.1(d)(2)(i). The Final Order here clearly states that defendant (i) is not a citizen or national of the United States (ii) was not lawfully admitted for permanent residence (iii) has a final conviction of an aggravated felony and is (iv) ineligible for any relief from removal that the Attorney General may grant in an exercise of discretion. (Exhibit L.) Furthermore, the Attachment states,

---

[8] The Government states that additional documents supporting defendant's deportability are in his A-file which was not filed with the Court. (Mot. to Dismiss Hr'g Tr. ("Tr.") 14:13-16, 14: 24-25, 16:21-17:1, February 2, 2010.)

I have considered all the information related to the Administrative
Removal proceedings in your case, including your written
response. I find that your alienage and the charge of removability
under section 237(a)(2)(A)(iii) of the INA have been sustained by
clear, convincing and unequivocal evidence.

(Exhibit L.) The Service need not provide a detailed memoranda of the "the particulars of Mr.

Penny's objections" in order to comply with is obligations. See Vermont Yankee Nuclear Power

Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 524 (1978) ("Agencies are free

to grant additional procedural rights in the exercise of their discretion, but reviewing courts are

generally not free to impose them if the agencies have not chosen to grant them.")[9]


C.      *List of Available Legal Counsel and Failure to Notify Consular Officials*

Defendant states he was not provided with a "list of available free legal services

programs" pursuant to 8 C.F.R. §238.1 (Mem. in Supp. at 8-9) and that DHS failed to notify his

consular officials (Reply Mem. at 4). A deportation hearing is a civil, not criminal, proceeding.

INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984). As a result, many of the protections

afforded defendants in criminal proceedings are not constitutionally required in immigration

proceedings. Pinto-Montoya v. Mukasey, 540 F.3d 126, 130 (2d Cir. 2008). With regard to the

expedited removal of an alien convicted of an aggravated felony, "[t]he Attorney General shall

provide that . . . the alien shall have the privilege of being represented (at no expense to the

government) by such counsel, authorized to practice in such proceedings, as the alien shall

---

[9] While not raised by the parties, the Court notes that the Final Order is dated June 8, 2006 (Exhibit L), which
is before the Notice of Intent was served on defendant (Exhibit H). Also, while it is uncontested that the Notice to
Appear was issued on November 7, 2005, it was "approved as to legal sufficiency" on June 8, 2006. (Exhibit G.)
The fact that the top of the Final Order is dated prior to defendant receiving the Notice of Intent and submitting a
rebuttal gives the Court pause. However, the Service executed the Final Order on July 17, 2006 and stated in the
Attachment that defendant's rebuttal was considered. The Government also stated at oral argument that removal
documents are often drafted simultaneously. (Tr. 20:18.) The Government argues that this does not mean that the
documents relied upon to issue the defendant's Final Order were not reviewed when they were executed on the later
date. (Tr. 19:21-24; 20:18-21; 20:23-21:1.)

choose." 8 U.S.C. § 1228(b)(4)(B). In addition, 8 C.F.R. § 238.1(b)(2)(iv) states the "Service shall provide the alien with a list of available free legal services programs . . . ."

Although the Notice of Intent makes reference to a list of legal services, defendant argues that he was not provided with this list. The Second Circuit has refused to remand cases where defendant fails to demonstrate prejudice as a result of the Service's failure to comply with a regulation that is not mandated by the Constitution or federal law. Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993). "The fundamental right an alien derives from 8 U.S.C. § 1228(b)(4)(B) and 8 C.F.R. § 238.1(b)(2)(iv) is limited to the right to be informed that he may retain counsel to represent him in the proceeding." Brown, 127 F.Supp.2d at 405. The Notice of Intent clearly informed defendant that he may be "represented by counsel, authorized to practice in this proceeding" and that if he "wish[es] legal advice and cannot afford it, [he] may contact legal counsel from the list of available free legal services provided to [him]." (Exhibit H.)

The regulation that the Service shall provide a list of attorneys and legal services agencies to an alien does not confer a fundamental right. Defendant here was not prejudiced by the Service's failure to provide a list of attorneys. "In particular, defendant does not claim that he did not, or could not, read either [the Notice to Appear] or [the Notice of Intent], both which advised him of his right to seek legal representation on his own, and that a list of attorneys and legal services that could represent him at little or no cost was available." Brown, 127 F. Supp.2d at 405. Furthermore, defendant was represented by counsel during his deportation proceedings. (Tr. 47:25-48:6, 49:22-50:12; see also Exhibit K "The fifth reason is my lawyer (Mr. Leavitt) told me that my stepfather can spons[o]r me . . .".) Therefore, because the Service's "regulation does not affect fundamental rights derived from the Constitution or a federal statute" and defendant makes no "showing of prejudice," the Service's failure to provide a list of attorneys

and legal services did not deprive defendant of the opportunity for judicial review.  <u>Waldron</u>, 17 F.3d at 518.

Defendant argues that DHS failed to contact defendant's consular officials, however, 8 C.F.R. §236.1(e) states that "[e]very detained alien shall be notified that he or she may communicate with the consular or diplomatic officers of the country of his or her nationality in the United States."  Defendant's Notice of Rights, provided with the Notice to Appear, informed him that he could contact his consular officials at any time.  (Exhibit F.)  In addition, defendant filled out a form, which was provided with the Notice of Intent, requesting that his consular officials be notified.  (Exhibit J.)  This form states that after being notified, "your consular may contact you."  (<u>Id.</u>)  It is unclear whether the Service contacted defendant's consular officials, however, even if the Service was obligated to do so, this provision, like the one to provide a list of attorneys, does not implicate a fundamental right.  <u>See</u> <u>Waldron</u>, 17 F.3d at 518 ("Section [236.1(e)][10] was adopted to ensure compliance with the Vienna Convention on Consular Relations," which provides that "aliens shall have the freedom to communicate with consular authorities of their native country.  Although compliance with our treaty obligations clearly is required, we decline to equate such a provision with fundamental rights.") (internal citations omitted).  With regard to prejudice, defendant was informed that he could contact his consular officials at any time and that consular officials may be able to obtain counsel for him.  Therefore, assuming the Service failed to provide a list of attorneys and failed to notify defendant's consular officials, these omissions did not bar defendant from obtaining judicial review.

---

[10]  Formerly 8 C.F.R. §242.2(g).

D. *Notice of Judicial Review*

Defendant's counsel also argues that it is unclear whether defendant was informed of his right to judicial review. (Mem. in Supp. at 7.) The Final Order herein does not demonstrate whether defendant waived his right to petition for review. However, defendant acknowledged service of the Notice of Intent which stated, albeit incorrectly, that he had fourteen days to file a petition for review after a final order was entered. (Exhibit H.) Defendant was therefore notified that he could apply for judicial review. Furthermore, neither 8 U.S.C §1228 nor 8 C.F.R. §238.1 states that defendant must be notified that he could apply for judicial review. The Courts have not held that there is a "stand-alone right to notice of the availability of judicial review." United States v. Lopez, 445 F. 3d 90, 96 (2d Cir. 2006); (Opp'n at 5.)

E. *Time to File Petition for Review*

Defendant alleges that the Notice of Intent incorrectly stated that he had fourteen days to appeal a final order of deportation when, pursuant to 8 U.S.C. §1252(b)(1), he actually had thirty days to file a petition for review with the United States Court of Appeals, Second Circuit. (Reply Mem. at 2.) The Notice of Intent states that pursuant to §238(b) of the INA, 8 U.S.C. §1228(b), the Service determined that defendant was amenable to expedited administrative removal proceedings. (Exhibit H.) According to 8 U.S.C. §1228(b), which pertains to the expedited removal of aliens convicted of committing aggravated felonies,

> [t]he Attorney General may . . . issue an order of removal pursuant to the procedures set forth in this subsection . . . [but] may not execute any order . . . until 14 calendar days have passed from the date that such order was issued, unless waived by the alien, in order that the alien has an opportunity to apply for judicial review under section 1252 of this title.

Section 1252(b)(1) pertains to the judicial review of orders of removal and provides that a "petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. §1252(b)(1). The Court reads these statutes as permitting the Attorney General to remove defendant fourteen days after the Final Order but also providing defendant with thirty days to file a petition for review. See Flores-Ledezma v. Gonzales, 415 F.3d 375, 380, n. 6 (5th Cir. 2005) (defendant "filed his petition within 30 days of the date of the final order of removal as required by [8 U.S.C. §1252](b)(1). . . [T]he fact that the [Service]'s notice to [defendant] advised him that he could seek judicial review of the order by filing a petition for review within 14 calendar days after the date the final order was issued (presumably the 14-day waiting period for deportation prescribed by [8 U.S.C. §1228](b)(3)) does not alter the statutory grant of 30 days to file a petition for review in [8 U.S.C. §1252] (b)(1)."). Therefore, defendant was misinformed by the Notice of Intent, which stated that "defendant may seek judicial review of any final administrative order by filing a petition for review within 14 calendar days after the date such final administrative order is issued, or . . . may waive such appeal by stating, in writing, [his] desire not to appeal." (Exhibit H.) The Government must have its forms in order. These forms must accurately inform the defendant of what he faces and what he can do to contest his removal. While the Court cannot fathom why such errors are in form orders frequently used by the Service, the Court is not persuaded that the Service's misinformation on the Notice of Intent barred defendant from obtaining judicial review.[11] Defendant failed to take any action to file a petition for review or to request additional time to file for review.

---

[11] The language of the Notice of Intent has since been changed. (Tr. 10:7-10.)

F.      *Deportation After Eight Days*

Defendant argues that he was deported eight days after being served with the Final Order, contrary to 8 U.S.C. §1228(b)(3) and 8 C.F.R. §238(f)(1).  (Mem. in Supp. at 7.)  Defendant further argues that the documents served with the Final Order, read together, misinformed him regarding the availability of judicial review.  (Reply Mem. at 3.)  In addition, defendant states that the Service's cumulative actions dissuaded him from seeking judicial review.  (Id.)  The Government does not dispute that defendant was "removed before the fourteen-day period mandated by 8 U.S.C. §1228(b)(3)," but argues that defendant's removal "would not have precluded the court of appeals from exercising jurisdiction over a timely-filed petition for review."  (Opp'n at 6-7.)  In addition, while not completely conceding that defendant was barred from obtaining judicial review, the Government does acknowledge that it would be reasonable for the Court to find that defendant was deprived of judicial review.  (Tr. 22:12-18.)

This Court agrees that the Second Circuit would have maintained jurisdiction had defendant timely filed a petition for review.  See Spina v. Department of Homeland Sec., 470 F.3d 116, 124-125 (2d Cir. 2006) ("No statute currently in force makes the alien's presence in the United States a jurisdictional prerequisite for our consideration of 'questions of law raised upon a petition for review.'") (citing 8 U.S.C. §1252(a)(2)(D); Moore v. Ashcroft, 251 F.3d 919, 922 (11th Cir. 2001) ("Noticeably absent from the [IIRIRA] permanent rules, however, is any [] language removing federal review jurisdiction in the event an alien departs or is removed."); Tapia Garcia v. INS, 237 F.3d 1216, 1217 (10th Cir. 2001) (stating that "deportation no longer forecloses judicial review")); see also Flores-Ledezma, 415 F.3d at 379-380 (5th Cir. 2005) (defendant "has filed a timely petition for review which is not mooted by his subsequent removal

from the United States.") However, the Court finds that the Government's errors herein deprived defendant of judicial review.

Congress has provided the Attorney General with the power to prescribe regulations for expedited removal proceedings. 8 U.S.C. §1228(b)(4). The Government failed to follow these regulations. While, separately, the procedural errors may not have deprived defendant of judicial review, cumulatively, the Court assumes that defendant's early removal, taken together with the misinformation on the Service's forms that he only had fourteen days to file a petition for review, precluded defendant from obtaining judicial review. See Lopez, 445 F.3d at 99 ("While the interval of time in which it is realistically possible for an alien [to] seek judicial review may be quite short where the alien has not received misinformation, the analysis differs where the government affirmatively misleads an alien about the availability of relief.")

## II.     Fundamentally Unfair

"[T]o show that a prior deportation was fundamentally unfair, a defendant must show actual prejudice." U.S. v. Garcia-Jurado, 281 F.Supp.2d 498, 507 (E.D.N.Y. 2003). Actual prejudice exists where defects in the deportation proceedings "may well have resulted in a deportation that would not otherwise have occurred." U.S. v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002); see also Lopez, 445 F.3d at 100 ("[P]rejudice is shown where there is a reasonable probability that, but for the . . . errors, the alien would have been granted . . . relief.")(internal citations omitted). "'[A] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" U.S. v. Clinton, 653 F.Supp.2d 446, 452 (S.D.N.Y. 2009) (citing United States v. Scott, 394 F.3d 111, 118 (2d Cir. 2005)).

Defendant argues that "had DHS properly complied with its own statutory and regulatory procedures, there is a strong likelihood that [his] expedited removal proceedings would have been terminated and section 240 proceedings instituted instead." (Reply Mem. at 7.) Defendant further argues that had he appeared before an immigration judge, "he would have had a reasonable possibility of adjusting his status with a §212(h) waiver." Id. According to the Government, the "crux" of defendant's argument is that he was "deprived of the opportunity to have a judge consider his claim" and that he would have been eligible for discretionary relief. (Opp'n at 8.) However, for defendant to "succeed in collaterally attacking his deportation order, he must show not only that he was effectively deprived of his right of direct appeal, but also that the administrative proceedings were fundamentally unfair in some respect that would have entitled him to relief on direct appeal." U.S. v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002) (internal quotations and citations omitted.) Defendant does not meet this burden.

"[I]f the Attorney General determines that an alien is deportable under 8 U.S.C. §1227(a)(2)(A)(iii), based on conviction of an aggravated felony, the Attorney General may issue an expedited removal order pursuant to 8 U.S.C. § 1228(b)(1)." Brown, 127 F.Supp.2d at 407. [12] In 1996, Congress amended 8 U.S.C. §1228(b) to provide that, if the Attorney General uses the expedited removal procedure, the non-LPR aggravated felon is categorically barred from receiving any form of discretionary relief-including relief under §212(h).[13] Jankowski-Burczyk v. I.N.S., 291 F.3d 172, 180 (2d Cir. 2002); see also U.S. v. Couto, 311 F.3d 179, 190 (2d Cir. 2002) ("An alien convicted of an aggravated felony is automatically subject to removal

---

[12] The Attorney General, in his discretion, may determine the removability of a non-LPR guilty of an aggravated felony and issue an order of removal pursuant to the procedures of 8 U.S.C. §1229a, which would be before an immigration judge, or 8 U.S.C. §1228(b), which triggers expedited removal proceedings. 8 U.S.C. §1228(b)(1).

[13] However, removal proceedings under 8 U.S.C. §1229a do not bar a non-LPR from applying for a discretionary waiver of deportation under 8 U.S.C. §1182(h).

and no one-not the judge, the INS, nor even the United States Attorney General-has any discretion to stop the deportation.") [14]

The Final Order here stated that defendant was deportable because he (i) is not a citizen or national of the United States (ii) was not lawfully admitted for permanent residence (iii) has a final conviction of an aggravated felony and is (iv) ineligible for any relief from removal that the Attorney General may grant in an exercise of discretion.  (Exhibit L.)  Defendant, in his rebuttal, did not contest citizenship or nationality or that he was convicted of an aggravated felony.  Defendant argues that his record should have raised an issue to the Service regarding whether he was lawfully admitted for permanent residence.  Defendant states that he informed the Service that he entered the United States as an infant and was thus unaware of the details of his entry.  (Exhibit F)  Defendant alleges that his daughter was born in the United States on May 6, 2006, that his mother has a green card and that his step-father is a United States citizen, who he believed could sponsor him.  (Exhibit K.)

In order to convert expedited proceedings under 8 U.S.C. §1228, §238 of the INA, to removal proceedings before an immigration judge under 8 U.S.C. §1229a, §240 of the INA, defendant would have had to raise a genuine issue of material fact, which would trigger the Service officer to obtain additional evidence.  8 C.F.R. §238.1(d)(2)(ii).  However, defendant failed to provide any supporting documents to raise a genuine issue of material fact in his rebuttal.  See 8 C.F.R. §238.1(c)(2)(i) ("If an alien chooses to rebut the allegations contained in the Notice of Intent, the alien's written response must indicate which finding(s) are being

---

[14]  The Fifth, Eighth and Ninth Circuits have held that "a rational basis exists for granting the Attorney General discretion to place some non-LPR aggravated felons into expedited removal proceedings and others into potentially more lenient general removal proceedings." U.S. v. Calderon-Segura, 512 F.3d 1104, 1107-1108 (9th Cir. 2008) (citing Gonzalez v. Chertoff, 454 F.3d 813, 818 (8th Cir. 2006); Flores-Ledezma v. Gonzales, 415 F.3d 375, 381-82 (5th Cir. 2005)).

challenged and should be accompanied by affidavit(s), documentary information, or other specific evidence supporting the challenge.")

Defendant also failed to state what relief he was seeking. To the extent that defendant is trying to argue that he was requesting relief pursuant to 8 U.S.C. §1182(h), §212(h) of the INA, when he stated that he had a daughter who is a United States Citizen, the "statutory scheme [] bars § 212(h) relief to non-LPR aggravated felons if the Attorney General uses expedited procedures." Jankowski-Burczyk v. I.N.S., 291 F.3d 172, 179 (2d Cir. 2002).[15] Furthermore, adjustment of status under 8 U.S.C. §1255, §245 of the INA, is also discretionary. See 8 U.S.C. §1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence. . . .") Even if defendant was to prove that the Service officer reviewing his application failed to take his rebuttal into account, defendant was ineligible for relief. As defendant failed to provide evidence that he was a citizen, or was lawfully admitted for permanent residence or that he contested his classification as an aggravated felon, the Service officer's issuance of the Final Notice was within his discretion. See 8 C.F.R. §238.1(d)(2)(i) ("If the alien timely submits a rebuttal to the allegations, but the deciding Service officer finds that deportability is established by clear, convincing, and unequivocal evidence in the record of proceeding, the deciding Service officer

---

[15] Defendant references a report dated September 2002 by the Service stating that, in determining the applicability of a waiver under Section 212(h) in expedited removal proceedings, a Notice to Appear "must be served on the alien to begin removal proceedings before an immigration judge." (Mem. in Supp. at 13; Reply Mem. at 7.) The Government, however, argues that this report is "not a statement of agency policy" and directs the Court to the Detention and Deportation Officer's Field Manual, ("Field Manual") which states that "[u]nder no circumstances should a Notice to Appear. . . be issued" in a case where the "alien" is in "administrative deportation under [§]238(b) [of the] INA." (Suppl. Mem. at 3); Dep't of Homeland Security, United States Immigration & Customs Enforcement, Detention and Deportation Officers' Field Manual § 15.1 (2002), FIMDDOFMN.

shall issue and cause to be served upon the alien a Final Administrative Removal Order that states the reasons for the decision of deportability.")[16]

Furthermore, a "strong likelihood" that expedited proceedings under 8 U.S.C. §1228 would have been converted to removal proceedings before an immigration judge under 8 U.S.C. §1229a is not the legal standard which would entitle defendant to the relief he seeks here. (Reply Mem. at 4.) Assuming, *arguendo*, that defendant had raised an issue of material fact and the Service had converted his expedited proceedings to proceedings in front of an immigration judge, defendant has not established a reasonable probability that the immigration judge would have granted him relief pursuant to 8 U.S.C.A §1182; §212(h) of the INA or 8 U.S.C. §1255, §245 of the INA.

Defendant argues that he would have been able to "demonstrate extreme hardship to his infant daughter, who had been hospitalized in the NICU just six weeks before his deportation." (Mem. in Supp. at 11-12) A §212(h) waiver is available in the Attorney General's discretion if the alien's deportation would result in "extreme hardship" to a citizen of the United States or LPR who is the alien's spouse, parent, or child. Samuels v. Chertoff, 550 F.3d 252, 254 (2d Cir. 2008). A waiver of inadmissibility is considered an "exceptional" form of relief, and the concept of "extreme hardship" has been construed narrowly. United States v. Fernandez-Antonia, 278 F.3d 150, 161 (2d Cir. 2002). "Even if the alien should succeed in establishing extreme hardship, that becomes just one favorable discretionary factor to be considered, which may be

---

[16] Defendant also argues that §14 of the Field Manual provides "repeated opportunities for an officer to terminate a 238(b) hearing and institute [] proceedings under §1229[a]." (Docket entry 23.) The Field Manual, similar to 8 C.F.R. 238.1(d)(2)(i), provides that an officer has the discretion to convert proceedings if an "alien" raises "a genuine issue of material fact involving novel, very complex and/or discretionary matters." Dep't of Homeland Security, United States Immigration & Customs Enforcement, Detention and Deportation Officers' Field Manual App. 14-1.IV (2002), FIMDDOFMN. As discussed *infra*, defendant submitted a rebuttal with no additional or supporting documentation, as required by 8 C.F.R. §238.1(c)(2)(i). Therefore, defendant fails to establish that he raised a "genuine issue of material fact." Moreover, the officer has discretion, but is not required, to convert the expedited removal proceeding.

weighed against the negative factors making the alien undesirable as a permanent resident."

Adebeyo v. Ashcroft, No. 02 CV 02684, 2003 WL 21143028, 2 (E.D.N.Y. March 6, 2003) (citations omitted.) Therefore, even if defendant's expedited removal proceeding was converted to a proceeding before an immigration judge, defendant's request for discretionary relief under §212(h) is far from a foregone conclusion. Section 212(h) of the INA provides for "exceptional relief." Defendant provided no contemporaneous affidavits or documents to establish extreme hardship to a United States citizen by his deportation. At best, defendant raises a reasonable possibility that he could have been eligible for discretionary relief had he been in §1229a removal rather than §1228 removal proceedings. However, a reasonable possibility does not satisfy the standard here.

Therefore, even if the Court assumes the Service's cumulative actions barred defendant from seeking judicial review, defendant fails to demonstrate prejudice. Defendant does not demonstrate that but for the errors, he would have been granted relief. Falling short of his burden, defendant's motion collaterally attacking the validity of his prior deportation order should be denied.


## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion to dismiss the indictment should be denied.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

                                      _____/S/_____
                                      LOIS BLOOM
                                      United States Magistrate Judge

Dated: February 5, 2010
       Brooklyn, New York